2209. Mr. Michelman, we'll hear from you whenever you're ready, sir. Thank you, Your Honor. Scott Michelman, Public Citizen for Appellants, Consumer Groups. May it please the Court, because the intervention and related procedural issues have been briefed twice now in the main briefing and in the motion to dismiss briefing, I'd like to focus my presentation on sealing and pseudonymity. This is the first ever challenge to the operation of a database mandated by Congress to help the public learn about potentially dangerous products. The case was litigated entirely under seal with secret facts, a secret party, secret witnesses, secret arguments, and even a secret docket. Secret litigation to protect a party's reputation is unprecedented and it is inconsistent with the First Amendment. Under any standard, even if there were a compelling interest here, the seal was far broader than necessary to protect any interest, any legitimate interest of the companies that could justify a seal. In addition, pseudonymity was clearly inappropriate under this Court's test and no Court has recognized the protection of professional reputation as an interest that justifies pseudonymity in the face of the strong tradition of open courts and the public interest in knowing who is using their courts. So I'd like to expand upon each of those issues in turn. For sealing, to justify a seal under the First Amendment, a compelling interest must be shown and the seal must be narrowly tailored to serve that interest. Here, neither one of those criteria is satisfied. Reputation is not a compelling interest justifying seal. This Court has said so in the memorandum decision in under seal versus under seal. That's the under seal two case, as we've described it in our briefing. And numerous other courts of appeals agree, as also described in our briefing. Additionally, the seal is not narrowly tailored, even assuming there were some interest that justified the sealing of this case. The sealing of the judicial opinion in this case could not possibly harm Company Doe because, as your honors can see, the district court's opinion vindicates Company Doe and its product, going so far as to praise the company's solid track record of safety. That being so, there is no reason to keep the opinion sealed now. In fact, if you look at it from the outset of the case, one of two outcomes was going to occur. Either the company would be vindicated, as it was here, in which case the sealing of the case was not in service of any interest in the company's because... How do you know the company was vindicated? Well, from what we can see in the district court's opinion, only 10 percent of which is sealed, the other 90 percent are pretty praising of the company. The district court praises the solid track record of safety and suggests that there was no connection between the alleged harm in the report that was intended for publication in the database and the company's product. That's got to be pretty good for the company. So whatever interest the company had is not served by sealing that opinion or any of the summary judgment documents that justified it. That could only bolster the district court's conclusion vindicating the company. What is it that you want unsealed? How much of the record do you want unsealed? We think the entire record should be unsealed. And the reason for that is this country has a strong tradition of open court proceedings. Cases about products liability and defamation, environmental pollution, discrimination, fraud, they're all litigated in the public. In fact, if the alleged victim of this product, alleged product accident had come forward and sued in tort, the company wouldn't be here arguing that that case should be litigated under seal. It would be in the open. The whole thing would be in the open. The medical reports, the expert testimony, the witnesses, the whole thing. So this seal is really unprecedented. Unless there is some sort of national security interest or trade secret here and no party to our knowledge has asserted that there is, there is no justification for sealing any of the record in this case. This is not unfair to Doe. Doe has argued at length that it would be sacrificing the right that it sought to protect if it had to litigate this out in the open. But to litigate closed is giving Company Doe more than the right it sought to protect. The right it sought to protect is the right to stay out of a specific government database with the government imprimatur versus in court proceedings where there is a, the public has a First Amendment right in having access to those proceedings. That's a different standard. It's a different forum. And Company Doe itself chose to use that forum when it chose to attack the complaint in the database, as was its right. But as Judge Easterbrook pointed out for the Seventh Circuit, when you go into court, you have to take the forum with all of its attendant procedures, including the long tradition of public openness and the First Amendment. And that may have been an uncomfortable choice for Company Doe, but it did gain a substantial benefit in getting its complaint out of the database with that implicit or even explicit government imprimatur, the dot gov website. And the price of that should have been, as it is in every other case, that it had to do it in the open. Do you know whether this case has come to the attention of Congress, not to suggest that means anything in particular, but has it come to the attention of Congress and perhaps the need for some tweaking of the new statute? I your honor, I can't speak to that. I don't know whether it has or not. But what I can say is that it would defeat Congress's objective in the CPSIA to create this database, to get information out to the public if companies, whenever they were concerned that a product report in the database was unfair, could go into court and have the entire matter litigated under seal. That can take years, as has been the case here between the district court litigation and this appeal. The entire time, the report has not appeared. Now, that may be fine in this case if Company Doe is correct and we're not challenging the district court's ruling that the complaint shouldn't appear in the database. But imagine if the company is wrong. Any company now, under the district court's logic, can come in, say this is unfair to us, litigate the whole thing under seal. The public won't know about it for two years, whether the company is right or wrong. How do you address the fact that the Consumer Product Safety Commission had no objection to what the district court did? They didn't appeal. Well, I think, your honor, that may speak to their, that may speak to a number of factors. I would be speculating. Well, it speaks to this fact. They're charged with responsibility for implementing, prosecuting, etc., etc. The act, and this case was tried before a district judge, and the record speaks for itself, but the Consumer Product Safety Commission had no difficulty with that. They didn't appeal. You're coming in here, and you want to usurp the position of the commission and take over that role under the Consumer Product Safety, under the act, and litigate this thing again. After the commission has already litigated it. Respectfully, no, your honor. The commission may well have decided that it was not worth appealing the judgment on the merits, but the right to access the court proceedings under the First Amendment is a right that belongs to all the public. Wasn't the commission enjoined from filing that report in the database? They were enjoined from filing the report. And they didn't object to that? Well, I think they litigated it heavily, but they decided not to appeal. So now you want to usurp the role of the commission and open this whole thing up and try the case again? No, your honor. We're not seeking to try the case again. We're not seeking to have the decision regarding what appears in the database overturned. What we're seeking to do is enforce the public's right to see what's in federal court. And as you can see from the amici in this case, which include prominent news organizations, The New York Times, The Washington Post, Bloomberg, Dow Jones. Well, in this case, what exactly is it you want to open up? We would like to open up the court. You say you're not concerned with the enjoyment of the filing of the report in the automatic database. So what exactly is it you want to open up? We want to open up the court records. Well, that's part of the court record. Tell me specifically, what part of this record do you want to open up? All of it, your honor. And the reason there's a difference. Well, you just got through saying you weren't concerned with the enjoining of the filing of the report within the automatic database. You just got through saying that didn't concern you. Well, there's a difference, your honor. We believe a critical difference between the filing of the report in the database and the filing of the report in court. Court papers are generally public. Even inflammatory allegations, baseless allegations, people come into court all the time and say all kinds of things. Now, that's different from a database with a .gov website and the government imprimatur. This is a government agency database saying we got this complaint and it is, you know, we at least have not yet found it to be materially inaccurate. Now, it's one thing to keep it out of the database. But you are objecting to the fact that the commission was enjoined from filing the report in the database. In fact, that's what you're saying. We are not objecting to the filing of the report, to the non-filing of the report in the database. We don't have standing to challenge that. We're not here to challenge that. But it does belong in the public court record as has been the tradition in our society and under our First Amendment. You think it's without a difference? Well, respectfully, I disagree, Your Honor. I mean, and I think it goes back to the hypothetical. Imagine if the party that was injured in this case had filed a tort lawsuit against Company Doe and said, I was hurt by this product. That, I don't think there's an argument that that would be understood. Suppose the party was not injured. Would it change your argument? No. That case would be in public and Company Doe would, as it was here, be vindicated by the public court proceedings. It would win its lawsuit and everyone would know that Company Doe's product was safe. We're not here on some vendetta against Company Doe. We want to know how the courts are operating and how this database will operate going forward. And this is the first challenge to the operation of this database that was mandated by Congress and is there to protect the public. We think the public should know about the litigation, deciding how it's going to work. Talk to us a little bit about your Article III standing. Yes, Your Honor. We have Article III standing under FEC versus Aikens, the Supreme Court decision holding that the denial of information to which a party has a right is an injury concrete enough to satisfy Article III. Additionally, the Supreme Court held in that case that the fact that the grievance was shared among many people, here many people, the media, many members of the public, all members of the public, were excluded from the proceedings and could not access the material. The fact that that grievance is widely shared does not make it a non-justiciable generalized grievance. And under the authority of that case, we do have standing. And as can be seen by the media and others, there is quite a bit of public interest in this case. Now, if Your Honors decide that there are parts of this record that should not be sealed, another option would be to remand with specific instructions about what interests, what are compelling enough to justify closing court proceedings, such as reputation is not a compelling interest and sealing a judicial opinion that doesn't relate to an asserted interest is not narrowly tailored. I'd also like to turn to the question of pseudonymity in the two minutes I have left for my opening. No court has ever allowed, in fact, numerous courts, including the Fifth and Tenth Circuits, have rejected the proposition that injury to professional reputation, individual or corporate, can justify the use of a DOE pseudonym. Do you make a distinction between injuries to professional reputation and injuries to economic considerations? No, Your Honor, and neither do the cases. So they're one and the same as far as you're concerned? They're one and the same, and courts of appeals and district courts in this district have rejected that as a justification for pseudonymity. In addition— Has any court, any federal court or even state court, to your knowledge, ever permitted, outside of the grand jury context, a corporation to proceed by pseudonym? Not in a case in which the issue was contested. There are cases that refer to DOE companies, but usually that was either by agreement of the parties or there's no indication in the opinion that there was an objection by either party. So where it's been considered, we know of no case. So it's never been allowed, to your knowledge, over-objection? To our knowledge. This case is unprecedented on several levels. The pseudonymity for the protection of economic harm or professional reputation, and the sealing of an entire case to prevent an injury to reputation, if that were allowed. Could you say something quickly? I'm a little surprised—that's too strong a word—that the original interveners acquiesced for so long in a non-decision on the motion to unseal. Was it just the idea that the thought was the judge will get around to it soon enough, and then all of a sudden the case was decided on the merits? That's absolutely correct, Your Honor. And I see my time is expiring, but if I may answer. Please. We were just waiting. We were literally waiting for the court to rule. We were checking the docket. I called the court clerk several times to see what was going on. There was no entry. There was no public notice. And for all we knew, the judge was just taking a long time, as some judges sometimes do. So we did not file anything further because we didn't know that there were secret proceedings on the merits going on during this time. Do you know now whether or not the court sealed the courtroom for that hearing on the motion? We understand that it did, Your Honor. We certainly received no notice. So if you or one of your colleagues had actually just wandered in the courthouse that day, you wouldn't have been able to get into the courtroom during that hearing. That's correct. And it wasn't on the docket. It was absolutely not on the docket, Your Honor. There was virtually nothing on the docket. There was only Company Doe's original motion to seal. So there was no way for us to know when, no way for us to get in. The public was completely excluded. So it sort of blew our mind in July of 2012 when we got that order saying the seal is granted and, by the way, the case is over. All right. You have some time left, Mr. Michaelman. Thank you. Thank you, Your Honor. Mr. Felder, we'll be glad to hear from you, sir. Mr. Felder, could the seal be lifted six months from today? Would you have a cognizable objection? We would have a cognizable. Good morning, Your Honor, and please the court. How about 18 months from now? Our cognizable. How about 24 months from now? It is not. How about 36 months from now? The time frame is irrelevant. The answer is the same. The answer is the same. Ten years from now. Ten years from now, the answer is the same. In your submission, the public will never get a peep at this record. And that is precisely what was envisioned by the Consumer Product Safety Information Act. There is a statute at issue here, Judge Davis. And it is the statute that governs whether materially inaccurate false... The statute governs whether a federal district court can seal a public record? The statute surely governs. What part of the statute are you... If the court will allow me... No, I'd like my question answered. What part of the statute authorized the district court in this case to seal this record? And where in the court's order does the court discuss that portion of the statute? The statute authorizes and, indeed, creates a framework for what kind of materially accurate information goes on the Wild West of the web. Under the government's imprimatur. If this matter has not been... You're not answering my question, sir. And if you'd rather not answer it, that's fine. It's your 20 minutes. But I think I asked a pretty specific question in response to your assertion that this statute authorized the action of the district court in this case. This statute authorized the action of the district court in this case because... Not because where? I'd like to find the language in the statute that you're relying on. Without the action of the district court, there would be no remedy. Without the action of the district court, there would be no First Amendment right of access by Company Doe to this court in order to vindicate what turns out to be an entirely appropriate decision in a 73-page opinion that can be reversed only in the context of an abuse of discretion. The appellants indicate that they're not here to challenge what the finding was by the district court or by the agency. They just want to know what went on. Understood. And to know what went on is, in the balancing of the equities, insufficient to overcome the interest of Company Doe in this case to maintain the seal, as the court below indicated, in order to preserve its remedy. And why? Let me return to the language, if I may, Judge Davis, of the statute, which obviously is the appropriate linchpin of this court's decision and should be the appropriate linchpin under a Nixon versus Warner communication, which also was governed by a specific statute, which says these are the circumstances under which the Nixon tapes can be heard by the public. And the circumstances were laid out in the statute. Similarly, under the Consumer Product Safety Information Act, the circumstances under which materially accurate information can reach the public is carefully delimited by CPSC as the gatekeeper. In other words, Judge Davis, had CPSC responded to the concerns as raised by Company Doe with regard to the material inaccuracy of this particular report, it would have never seen the light of day. It would have never even been thought of in terms of getting on this particular database. Congress wanted a database that had integrity, with respect, Your Honor. They did not want the flotsam and jetsam of inaccurate reports. To determine that Company Doe does not have the right to litigate, which that determination would be if you reversed the court below and determined that Judge Williams abused his discretion. To determine that we would not have the right to litigate is to shut the door to any challenge to this particular database and potentially to other databases. We are, as Judge Williams pointed out in his concurring opinion in the Applebaum case, to which I direct this court's attention, we are in a new age of technology and how that technology determines the ultimate outcome of consumer decisions in this case, which again is the touchstone of what the CPSC has to determine in this case. Would a decision affect a consumer? Would the publication of this columnious report affect a consumer's decision whether or not to buy a particular product? And that question is for you. I think Judge Floyd has a question for you. On the other side, wouldn't the opening of this information allow the public to receive some level of comfort? Well, our government's working. Our government is working at the expense of Company Doe. I've heard that one before recently. And the notion that our government is working at the expense of particular employers or particular manufacturers is what we're here about today. And fortunately, we had the ability to go into court to mount a challenge to obtain an injunction against putting on this database of this particular erroneous report as ultimately vindicated. I think one of you had asked whether or not our position was vindicated. Indeed, it was vindicated by this court. And the reason, Your Honor, Judge Davis, that it doesn't make any difference 36 months from now as to whether or not this becomes public. Let's assume you were in the market for this particular product. And you had a choice 36 months from now. You had a choice between purchasing this product, which has been vindicated as a result of extensive litigation, with the unsealing of all of the Consumer Product Safety Commission briefs going in the opposite direction, indicating that this product was not safe, as so concluded by the judge. And you had the choice with that entire record between a product that had no record and a product that was ostensibly vindicated as a result of litigation. Which one would you choose? And the economic impact is what we are about here. The judge concluded, and it is an uncontradicted fact in the record, reputation is not what it is issue. In my friend Scott's brief, he mentions the word reputation, reputational, 36 times and neglects to indicate that economic and fiscal viability are what the judge concluded was at issue in this case. And that's one of the interests. So in the end of the day, what this court hopefully will ultimately do is balance the equities. Balance the compelling interest, the competing interest, whether we involve the common law test or the First Amendment test insofar as access to this material, against the interests of Company Doe in terms of preserving its economic integrity. And in addition to the economic integrity being at issue here, it's also the integrity of the database itself. There have been 17,000, approximately 17,000 entries onto the database. Any concern that this is going to be a kind of Pandora's box that Company Doe is opening and everybody is going to be rushing in, as indicated this morning by counsel, in order to prevent during the course of litigation, the publicity, the adverse publicity, seems to be unwarranted given the circumstances and the celebrity of this particular case. So there is a substantial interest at stake. And once again, I would urge this court to look extensively at the Nixon case. Because in that case, the court said that the right to inspect and copy public records, including judicial records, is not an absolute right. They recognized in Nixon v. Warner that sources of business information that might harm a litigant's competitive standing, and that's precisely what we're talking about in this case, that that is a legitimate concern insofar as the First Amendment issues that are put on the table and have been put on the table by consumer groups. The decision to access is one best left to the sound discretion of the district court. And I know that the district court, the former expertise insofar as the district court, is well represented on this panel. And the notion that courtrooms can be closed and gag orders can be imposed and protective orders can be agreed to and trade secrets can be protected, these are not extraordinary measures that are taken here. What is singular about this case, and the word singular is used in the Nixon v. Warner case, what is singular about our case is the vindication of a statutory construct, and that's why I was beginning with that in response to your question, Judge Davis. And that is we are deciding First Amendment rights in the context of the enforcement of a specific statute, whether it's the presidential papers or audio statute in Nixon v. Warner, whether it is the WikiLeaks statute in the Applebaum case decided by this circuit. In both instances, sealing was sustained in recognition of what the statute was about. And our argument boils down to if we win, as we did, insofar as the database is concerned, but we lose insofar as the attendant litigation is concerned, it is a Pyrrhic victory. No one will go to court to challenge any database entry. You will basically have shut the courthouse door to any legitimate challenge. Legitimate challenge? Any successful challenge, as in our case. If this court reviews it, reverses as an abuse of discretion, the decision below. Let me further reinforce, if I may, I see my time is beginning to dwindle. Let me further reinforce a concern expressed by Judge Hamilton insofar as the, well, what's unique about this case is the 800-pound gorilla that's not in the courtroom. The 800-pound gorilla being the government, Super Product Safety Commission. They are the protectors of the public interest in this case. They know the CPSIA. They vigorously litigated the sealing issue below. They're not in this courtroom. The absence of the entity that vindicates and supports, that represents the public interest is precisely why there are substantial standing and intervention difficulties with respect to consumer groups here. To put it in the vernacular, as the Supreme Court did in the Diamond case, and as re-echoed in Hollingsworth v. Perry, which is the Proposition 8 case, you can't piggyback on a party that's not here anymore. And that is precisely what consumer groups is attempting to do. They are attempting, this putative intervener is attempting to piggyback and represent the public interest. They make no secret about the fact that they are concerned about how this particular database works. They want to look over the shoulder of the CPSC to make sure that it works right. A role which is not reflected in the statute at all. There is no public right of action. There is no public right to participate in the process, in the process by which anything goes up or down from the database. And one could have envisioned such a role. Congress could have written the statute, as anybody thought of going back to Congress, Judge Davis. They could have written the statute in order to encompass a role for the public by which if there is an incident report, and that incident report is being objected to by the manufacturer for material inaccuracy, that there is some document which goes out to the public inquiring as to whether or not there are other reports or similar kinds of incidents. There is no role for the public anywhere near that kind of a participatory role in the process of what goes on on the website. So insofar as the standing of consumer groups in this case, I think it is extraordinarily suspect. I think as the Supreme Court said in Hullingsworth v. Perry, the individuals who were the architects of Proposition 8 had no standing in the absence of the State of California. The State of California was not before the Supreme Court, was not urging Proposition 8 be supported, and yet these individuals attempted as they participated actively below, which of course consumer groups did not participate below, they said we have the right to intervene, we have standing, and the Supreme Court says no you don't. Because you can't piggyback in the absence of the public interest being reflected. But the challenge there was the merits of the issue. Here they're not challenging the merits. Their challenge is to the public's right to have access to court documents. With respect, the details of their brief indicate that they do in fact want to look at the merits of whether, they want to comment on whether they have this lawnmower example in their brief, and somebody has a heart attack, and whether that's the sufficient nexus in terms of material inaccuracy. They want to get into the merits, and any pretense that they are not going to get into the merits of this particular incident, I think is misplaced with due respect. They want to be able to question, whether it's in the context of putting it on the database, which is irrelevant at this stage of the game, or whether it's in the context of discussing it in terms of litigation. It doesn't amount to any difference. They want to know what the CPSC did, and why it did it. They want to know what the court did, and why it did it, in so far as the merits of this particular incident is concerned. So it's not simply some kind of inchoate grievance, as to how the judge works, or how the court system works. Rather, it has to do with this particular incident, and whether or not this incident was appropriately adjudicated, in so far as whether it should have gone on the database, and that's where the comments are going to go, should this become public. Now, let me also respond to a question that was posed earlier to my colleague, as to whether or not there's been any company, any piece of litigation in which a company has proceeded pseudonymously. I believe, Judge Davis, you posed that question. The answer to that question is yes. There is a case to that effect, and the case is ExCorp v. John Doe. It's Eastern District of Virginia, and it was ultimately sustained by this court in one of the undersealed cases that are cited in the various briefs. Do you have a citation to that? I'm sorry? Do you have a citation to that case? The Eastern District did. We surely can supply that within 10 seconds. ExCorp v. Doe. Again, this is 805-FEDSUP-1298. Eastern District, 1992. And the undersealed versus undersealed case. Tom? The affirmance was 1994 WL-52197, as cited on page 29 of our brief. In sum, if I may, one of the cautions of Chief Justice Roberts in the Hollingsworth case is that there not be necessarily a rush to judgment on the merits of a case, no matter how enticing and no matter how efficient. That is a rough approximation of what he said. Hence, he decided that case on standing and intervention. That's the reason, Your Honors, that we filed our motion to dismiss early on with respect to the standing intervention issues, because we thought that they, like the merits of the sealing issues, have considerable wind in the sails. We would urge this Court to take a look at standing and intervention with the same kind of vigor and the same kind of rigorous analysis that clearly the Court has shown, and we very much appreciate this Court's attention to the question of sealing. With that, unless there are any further questions. Thank you. Thank you very much. Thank you, Mr. Fellner. Mr. McMillan, you have a few minutes left in rebuttal. Thank you, Your Honor. I'd like to address Let me ask you one thing before you get started. At what point did the public citizens intervene in this case? We filed for intervention, Your Honor, less than 10 days after we received notice that the motion to seal was granted. After what was granted? After we learned that the motion to seal was granted. We intervened at that point so that we could appeal. Now, the local rule had already permitted us to file objections to seal, which we did within the time provided under that rule. You answered that question. I don't want to take up all your time. What action did you take before the district court once you were allowed to intervene? We intervened. We filed a notice of appeal. But you took no action before the district court. Well, we had already filed objections to seal and filed our own motion to seal, both of which had been decided adversely to us. You filed a motion to seal? I'm sorry if I misspoke, Your Honor. We objected to Company Doe's motion to seal, and we filed our own motion to unseal the pleadings about the seal because we couldn't see how they could possibly contain any confidential information. Thank you. I'd like to address a number of points made by Mr. Fellner. First, with respect to X Corp versus Company Doe, that was a case about protecting attorney-client privilege, not corporate reputation or economic interests. Second, with respect to the Nixon case, the Nixon case is distinguishable several times over. One of them is that the public actually knew what the communications company in that case was seeking. They were seeking the Watergate tapes. The tapes had already been played at trial. So the question was access to the exhibits that had already been made public. The only similarity between this case and that one is, yes, there was a statute involved. But because there was alternative means of access, you don't have a situation like you have here where the public will never know what happened in this court. As for Mr. Fellner's assertion that there's some hidden agenda here, that we want to challenge the merits of the district court's decision, we can't. It's off the database. We haven't appealed that. We don't have standing to appeal that. This will never go on the database, and that's not our problem. But we do want to know, as Mr. Fellner said, what went on in the court because we want to know how the database is going to work. We want to know what standards apply. We want to know how the court did its job. If he's correct that there have been thousands of reports filed on the database, why don't you understand how it works? Well, because this is the first challenge to the operation of the database. This is the first time a court has explained how the database is going to work and how close the nexus has to be between the asserted harm and the product in order for the complaint, the report of harm, to make it into the database. And we're consumer groups. We're interested in this database. And the New York Times is, frankly, too, because of the 17,000 reports that have been filed. Are you proceeding under any statutory authority? No, we're proceeding under the First Amendment right, under the public's First Amendment right to access these proceedings. We're not standing in the shoes of the government. We're not asserting the government's rights. We're asserting the same right that's been asserted in all the intervention cases we've cited to this court, from the Third Circuit, the D.C. Circuit, the Seventh Circuit, and on and on, all of which concerned third parties who are not asserting the rights of any party, but instead were asserting their own rights as members of the public to access to the record. And that's the same thing we are asserting here. That is why the Hollingsworth v. Perry case is completely inapposite. The standing discussion, Mr. Fellner's standing discussion, assumes we're trying to take on the government's role. We are not. We are in our own right here with our own claim to access these records. As for Judge Davis's hypothetical, the notion, Mr. Fellner asserted, that in 36 months a consumer might purchase a product based on and make some decisions based on some allegations that were made and refuted by the district court. Judge Davis's question was, is it okay to seal it even in 36 months? Mr. Fellner said, well, the reputational harm will persist. I think that misunderstands the role of the courts in light of the First Amendment. It's not the court's job to decide what the public hears. When things go into court, they are presumptively public, and it turns the First Amendment on its head to suggest that the court is going to become the censor of what types of claims the public may hear. Are you familiar with, I was a district judge for 10 years, and on several occasions, I cleared the courtroom and sealed the record. Do you think that was wrong? Do you think we have the authority to do that? Not at all, Your Honor. We're not saying that courtrooms can never be cleared. The public didn't know what went on in the courtroom. I cleared the courtroom and sealed the record. Well, there are compelling interests that permit that, and I see my time has expired, but if I may continue to respond, Your Honors. There are many compelling interests that do justify such measures. One, for instance, Mr. Felner referenced the Nixon opinion again for this competitive business harm. He was referring to trade secrets. Another one is where the failure to close the courtroom might prevent the defendant from getting a fair trial. There are interests that are compelling. This just isn't one of them. And as Judge Davis pointed out, the CPSIA does not create this interest. There's no trade secret asserted here. So we fall back on first principles in this court's statement that civil cases are governed by this First Amendment right of public access. It's that right we're asserting here, and it's that right we ask this court to vindicate today. Thank you very much, counsel. We appreciate your arguments. No, I'm fine. We'll come down in Greek counsel and proceed immediately to our second case.
judges: Andre M. Davis, Henry F. Floyd, Clyde H. Hamilton